UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES W. SNYDER, | ) | 5:13CV2360 |
| | ) | |
| Plaintiff | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | (Mag. Judge Kenneth S. McHargh) |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMIN., | ) | |
| | ) | |
| | ) | |
| Defendant | ) | REPORT AND |
| | ) | <u>RECOMMENDATION</u> |

McHARGH, MAG. JUDGE

This case is before the Magistrate Judge pursuant to Local Rule.  The issue before the undersigned  is whether the final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff Charles W. Snyder's   applications for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C § 1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court recommends that the decision of the Commissioner be **VACATED** and **REMANDED**.

## I.  PROCEDURAL HISTORY

On December 22, 2009, Plaintiff Charles W. Snyder ("Snyder") applied for
Disability Insurance benefits and for Supplemental Security Income benefits as
well.  (Doc. 13, Tr., at 17.)  Snyder stated that he became unable to work because of
his disabling condition on January 5, 2009.  (Tr., at 17, 117, 123.)  Snyder listed his
physical or mental conditions that limit his ability to work as "spinal stenosis,
ruptured disc, pain, trouble walking, trouble sitting, can't lift over 10 libs.,
dysthymic disorder."  (Tr., at 150.)

Snyder's application was denied initially and upon reconsideration.  (Tr., at
75-78.)  On April 28, 2011, Snyder filed a request for a hearing before an
administrative law judge.  (Tr., at 94-95.)

An Administrative Law Judge ("the ALJ") convened a hearing on May 16,
2012, to hear Snyder's case.  (Tr., at 35-74.)  Snyder was represented by counsel at
the hearing.  (Tr., at 37.)  Lynn Smith, a vocational expert, attended the hearing
and provided testimony.  (Tr., at 37, 60-71.)

On June 22, 2012, the ALJ issued his decision applying the standard five-
step sequential analysis[1] to determine whether Snyder was disabled.  (Tr., at 14-

---

[1] Social Security Administration regulations require an ALJ to follow a five-step
sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§
404.1520(a), 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528,
534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in
> substantial gainful activity during the period of disability.  20 C.F.R. §

2

27.)  Based on his review, the ALJ concluded Snyder was not disabled.  (Tr., at 26-

27.)  Following the issuance of this ruling, Snyder sought review of the ALJ's

decision from the Appeals Council.  (Tr., at 12-13.)  However, the council denied

Snyder's request for review, thus rendering the ALJ's decision the final decision of

the Commissioner.  (Tr., at 1-3.)  Snyder now seeks judicial review of the

Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

Snyder briefs six issues:

1.  Whether substantial evidence supports the ALJ's finding at Step 1
that Charles [Snyder] engaged in SGA [substantial gainful activity] for
the third quarter of 2011.

2.  Whether substantial evidence supports the ALJ's finding that
Charles' spine disorders do not equal or meet listing 1.04 at Step 3.

---

404.1520(a)(4)(i). Second, the claimant must show that he suffers from
a severe medically determinable physical or mental impairment. Id. §
404.1520(a)(4)(ii).  Third, if the claimant shows that his impairment
meets or medically equals one of the impairments listed in 20 C.F.R.
Pt. 404, Subpt. P, App. 1, he is deemed disabled.  Id. §
404.1520(a)(4)(iii).  Fourth, the ALJ determines whether, based on the
claimant's residual functional capacity, the claimant can perform his
past relevant work, in which case the claimant is not disabled.  Id. §
404.1520(a)(4)(iv).  Fifth, the ALJ determines whether, based on the
claimant's residual functional capacity, as well as his age, education,
and work experience, the claimant can make an adjustment to other
work, in which case the claimant is not disabled.  Id. §
404.1520(a)(4)(v).

The claimant bears the burden of proof during the first four steps, but
the burden shifts to the Commissioner at step five. *Walters v. Comm'r
of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir.1997).

*Wilson  v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

3.  Whether the ALJ erred by not consulting a medical expert when considering whether Charles' spine disorders medically equals listing 1.04. at Step 3.

4.  Whether the ALJ's RFC [residual functional capacity] finding is supported by substantial evidence and whether the ALJ followed the requirements of SSR 96-8p based on the limitations imposed by Charles' spine disorders at Steps 4 and 5.

5.  Whether the ALJ followed the directives of SSR 96-7p when analyzing Charles' credibility, and whether the ALJ's credibility finding is supported by substantial evidence.

6.  Whether substantial evidence supports the ALJ's finding at Step 5 that Charles could engage in substantial gainful activity based on the evidence presented by the VE [vocational expert] regarding absenteeism and Charles' employment records.

(Doc. 14.)  The Commissioner has filed a brief in opposition (doc. 17) and Snyder has filed a reply brief (doc. 18).


## II.  PERSONAL BACKGROUND INFORMATION

Snyder was born on September 29, 1976, and was 32 years old as of his application date.  (Tr., at 25.)  Accordingly, Snyder was at all times considered a "younger person" for Social Security purposes.  See 20 C.F.R. §§ 404.1563(c), 416.963(c).  Snyder's highest level of education was high-school (GED).  (Tr., at 26, 151.)  He is able to speak, understand, read and write English.  (Tr., at 149.)  He has past work experience as a waiter and dispatcher.  (Tr., at 25, 152.)

### III.  MEDICAL EVIDENCE

As noted earlier, Snyder applied for Disability Insurance benefits and for Supplemental Security Income (SSI) benefits on December 22, 2009.  (Doc. 13, Tr., at 17.)  Snyder had reported the  physical or mental conditions that limit his ability to work as "spinal stenosis, ruptured disc, pain, trouble walking, trouble sitting, can't lift over 10 lbs., dysthymic disorder."  (Tr., at 150.)

The ALJ provided a fair and thorough summary of Snyder's medical history (tr., at 23-25), which will not be repeated here, in his decision.  Disputed issues will be discussed as they arise in Snyder's brief alleging errors by the ALJ.  The ALJ then concluded as follows:

> As for the opinion evidence, in June 2010, W. Jerry McCloud [M.D.], a State Agency consultant, reviewed the record and he opined that the claimant could work at the light exertional level.  Dr. McCloud asserted that the claimant could occasionally crouch and climb ladders, ropes, or scaffolds.  According to Dr. McCloud, the claimant could frequently stoop, kneel, crawl, and climb ramps and stairs.  I give weight to Dr. McCloud's assessment.  He reviewed the record and he based his conclusions on the evidence therein.  However, evidence acquired subsequent to Dr. McCloud's evaluation established that the claimant was further limited to sedentary level work and he required use of a handheld assistive device.

(Tr., at 25.)

### IV.  TESTIMONY OF VOCATIONAL EXPERT

At the hearing, the vocational expert, Lynn Smith, testified that Snyder had past employment as a waiter and a dispatcher.  (Tr., at 60.)  The ALJ put five hypothetical questions to the vocational expert.

5

The ALJ posed a hypothetical question concerning an individual with the claimant's age, education, and work experience.  This individual would be able to work at the light level; could occasionally climb ladders, ropes or scaffolds; could frequently climb ramps or stairs, stoop, or kneel; could occasionally crouch and frequently crawl; and could never reach overhead with his "right upper extremity" (presumably, his right arm).   The question was whether such an individual could perform Snyder's past work, to which Smith responded, "yes."  (Tr., at 61.)

The second hypothetical posed also involved an individual with the claimant's age, education, and work experience.  However, this individual would be able to work at the sedentary level.  He could never climb ladders, ropes or scaffolds; could occasionally climb ramps or stairs, stoop, kneel, or crouch; but never crawl; and could never reach overhead with his right arm.  Also, he could never "be exposed to unprotected heights."  The vocational expert responded that such an individual would be able to perform work as a dispatcher, but not as a waiter.  (Tr., at 61.)

The third hypothetical involved the same capabilities and restrictions as the second, but this hypothetical individual would need "a hand held assistive device for uneven terrain or prolonged ambulation."  Smith responded that such an individual would be able to perform work as a dispatcher.  (Tr., at 61-62.)

The ALJ then asked a fourth hypothetical involving the same conditions as the third, but this individual would need to be able to sit or stand alternatively, at

will, provided he's not off task for more than ten percent of the work period.  (Tr., at 62.)

Smith stated that such an individual would not be able to perform claimant's past work.  However, she responded that there were other jobs in the national or regional economy that such a person could perform:  (1) Polisher, DOT 713.684-038, which is sedentary and unskilled, SVP 2.  About 1,800 jobs in the local area, 5,000 in the state, and 65,000 nationally.  (2) Ticket-checker, DOT 219.587-010, also sedentary and unskilled, SVP 2.  About 7,000 jobs in the local area, 70,000 in the state, and 1.8 million nationally.  (3) Order Clerk, DOT 209.567-014.  Again, sedentary and unskilled, SVP 2.  About 2,600 jobs in the local area, 9,000 in the state, and 260,000 nationally.  (Tr., at 62.)

The ALJ then asked, to what extent could such an individual be absent from work on a monthly basis, and still be able to maintain employment?  The vocational expert responded "one to two times per month outside of the probationary period but not more than that."  (Tr., at 62.)  After further discussion, the vocational expert stood by her response, but noted that "absenteeism is . . . something that very individualized depending on what type of employer you work with too."  (Tr., at 63.)  Smith clarified that her answer was based on her experience.  (Tr., at 64-65.)  Counsel for Snyder at one point suggested that he would provide evidence of "engineering studies [which have shown that] anything greater than one day in an unskilled, SVP: 2 and less is, is not tolerated throughout the, the industry."  (Tr., at 64-65.)

7

In response to a query by the ALJ, the vocational expert testified, that in her experience, in unskilled employment, an employee who is "off task" for no more than five to ten percent of their work time would be able to maintain employment. "If it rises above ten percent, then I think maintainability can become an issue." (Tr., at 70.)

## V.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2.  The claimant engaged in substantial gainful activity during the following periods:  January 2009 through December 2009; and the third quarter of 2011 (20 CFR 404.1520(b), 404.1571 et seq., 416,920(b) and 416.971 et seq.).

3.  However, there has been a continuous 12-month period during which the claimant did not engage in substantial gainful activity.  The remaining findings address the period the claimant did not engage in substantial gainful activity.

4.  The claimant has the following severe impairments:  lower back pain and disorders of the spine (20 CFR 1520(c) and 416.920(c)).

5.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

6.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F. R. 404.1567(a) and 416.967(a) except that he must be allowed to sit or stand alternatively, at will, provided he is not off task more than 10% of the work period.  He can never climb

ladders, ropes or scaffolds. The claimant can occasionally climb ramps or stairs. He can frequently balance. He can occasionally stoop, kneel and crouch. The claimant can never crawl. He can never reach overhead with his right upper extremity. He must use a hand held assistive device for uneven terrain or prolonged ambulation. The claimant can never be exposed to unprotected heights.

7. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8. The claimant was born on September 29, 1976, and was 32 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 404. 1564 and 416.964).

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

12. The claimant has not been under a disability, as defined in the Social Security Act, from January 5, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Doc. 13, Tr., at 19-27.)


## VI. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act. See 42 U.S.C. §§ 423, 1381. A claimant is considered

9

disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  See 20 C.F.R. §§ 404.1505, 416.905.

## VII.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence.  Blakley v. Comm'r of Social Security, 581 F.3d 399, 405 (6th Cir. 2009); Richardson v. Perales, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  See Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, that determination must be affirmed.  Id.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion.  See Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986); Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).  This court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  See Garner v. Heckler,

10

745 F.2d 383, 387 (6th Cir. 1984).  However, the court may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  See Walker v. Sec'y of Health & Human Servs., 884 F.2d 241, 245 (6th Cir. 1989).

## VIII.  ANALYSIS

### A.  Substantial Gainful Activity

The first issue raised by Snyder is:  "Whether substantial evidence supports the ALJ's finding at Step 1 that Charles [Snyder] engaged in SGA [substantial gainful activity] for the third quarter of 2011."  Snyder concedes the work performed in 2009 was substantial gainful activity which precludes a finding of disability for that period, but disputes that he engaged in SGA for the third quarter of 2011. (Doc. 14, at 13-14.)

Snyder points to what he views as a discrepancy (of $54.00) between certified earning records, relied on by the ALJ, and his calculations of his pay stubs.  Snyder argues the correct earnings figure for that period should be $3,042.00, and that Snyder paid health insurance in the amount of $43.33 for that period.  (Doc. 14, at 14.)  Snyder contends that his health insurance was "an impairment-related work expense," which is entitled to be a reduction from SGA.  (Doc. 14, at 14, citing Social Security Ruling [SSR] 84-26 and 20 C.F.R. 404.1574.)  The Commissioner does not concede the accuracy of the pay stubs, and points out that, even if the health insurance payment was deducted, Snyder earned over $2,998 for the quarter, less

11

than $2.00 below the SGA level of $3,000, which is a de minimus distinction. (Doc. 17, at 9-10.)

Although the Commissioner does not argue the point, the court is unconvinced that payments toward ordinary health insurance would constitute "an impairment-related work expense," based on the authority provided by Snyder. According to SSR 84-26: "An IRWE means an expense for an item or service which is directly related to enabling an impaired individual to work and which is necessarily incurred by that individual because of a physical or mental impairment." SSR 84-26, ¶ A. The SSR includes attendant care services, medical devices, prostheses, work-related equipment or residential modifications, guide dogs, and other similar expenses "directly related to enabling an impaired individual to work." SSR-84-26.

The regulation cited by Snyder simply states that "the reasonable cost of any impairment-related work expenses" will be deducted from gross earnings in evaluating SGA. 20 C.F.R. 404.1574(b)(1). Section 404.1576 specifies which expenses may be deducted, similar to those listed in SSR 84-26: payments for attendant care services, medical devices, prosthetic devices, work-related equipment or residential modifications, and drugs and medical services directly related to the impairment. 20 C.F.R. 404.1576(c). The expense of ordinary health insurance coverage is not specified as "an impairment-related work expense," pursuant to either SSR 84-26 or 20 C.F.R. 404.1574.

12

Snyder also argues that his employer's accommodation of his hours and occasional absences should be viewed as an accommodation which reduces the value of the earnings he received.  (Doc. 14, at 14-15, citing 20 C.F.R. § 404.1574.)  Snyder does not provide authority which supports this assertion.  Section 404.1574, which he cites, does not address accommodations.  The regulations specifically state that "work may be substantial even if it is done on a part-time basis."  Katz v. Secretary, HHS, 972 F.2d 290, 292 (9th Cir. 1992) (quoting 20 C.F.R. § 404.1572(a)); see also Ladd v. ITT Corp., 148 F.3d 753, 754 (7th Cir. 1998).

In any event, the court finds that the ALJ's finding on the third quarter 2011 SGA earnings is based on substantial evidence in the record, the certified earning records.  (Tr., at 136, 19.)  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether some evidence might support the opposite conclusion.  See Mullen, 800 F.2d at 545; Kinsella, 708 F.2d at 1059.  This court's role is not to resolve conflicts in the evidence.  See Garner, 745 F.2d at 387.

The first alleged error should be overruled.

## B.  Step 3:  Spine Disorders

The second and third claims both concern Step 3, and will be considered together.  First, in his second claim Snyder challenges the ALJ's decision in Step 3 on this basis:  "Whether substantial evidence supports the ALJ's finding that Charles' spine disorders do not equal or meet listing 1.04 at Step 3."  Snyder claims

13

that the ALJ provided no analysis as to the Listing's application to his medical record, thus there is no ability to review the ALJ's analysis.  (Doc. 14, at 15.) Snyder argues that a prima facie showing of disability, meeting Listing 1.04, was established by the medical evidence and testimony, yet the ALJ failed to provide the applicable analysis in his decision.  (Doc. 14, at 17-18.)

As to the third claim, Snyder states the issue as:  "Whether the ALJ erred by not consulting a medical expert when considering whether Charles' spine disorders medically equals listing 1.04 at Step 3."  Snyder contends that sufficient medical evidence establishes Snyder's impairments medically equal Listing 1.04, such that a medical expert should have been consulted.  He states that no physical consultative exam took place, and Snyder argues that the evidence is beyond the ALJ's medical knowledge.  (Doc. 14, at 18-19.)

### 1.  Step 3 analysis

The Commissioner responds to the second claim, that where the ALJ's findings at Steps 4 and 5 preclude the claimant's qualification for benefits under the listings at Step 3, any alleged deficiency in the articulation of the ALJ's reasoning to support his Step 3 determination is harmless.  (Doc. 17, at 10, citing Fischer-Ross v. Barnhart, 431 F.3d 729, 735 (10th Cir. 2005).)

In the third step, it is claimant's burden to bring forth evidence to establish that his impairments meet or are medically equivalent to a listed impairment.  An impairment or combination of impairments is considered medically equivalent to a listed impairment "if the symptoms, signs and laboratory findings as shown in

14

medical evidence are at least equal in severity and duration to the listed

impairments." Ridge v. Barnhart, 232 F.Supp.2d 775, 788 (N.D. Ohio 2002)

(quoting Land v. Secretary, HHS, 814 F.2d 241, 245 (6th Cir. 1986) (per curiam)).

The elements of Listing 1.04 are:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04.  Listing 1.04(C) includes an

"inability to ambulate [walk] effectively":

b. What We Mean by Inability To Ambulate Effectively

(1) Definition.  Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  Ineffective ambulation is defined

generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.00(B)(2)(b).

In a recent case, the Sixth Circuit recognized that the relevant Social Security regulations require an ALJ to find a claimant disabled if he meets a Listing. Smith-Johnson v. Commissioner, No. 13-1696, 2014 WL 4400999, at *5 (6th Cir. Sept. 8, 2014). (citing 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); Sullivan v. Zebley, 493 U.S. 521, 532 (1990)). However, the court noted that "neither the listings nor the Sixth Circuit require the ALJ to 'address every listing' or 'to discuss listings that the applicant clearly does not meet.'" Smith-Johnson, 2014 WL 4400999, at *5 (citations omitted).

Where the ALJ's decision does not discuss the Listing, the court must determine whether the record evidence raises a substantial question as to the

16

claimant's ability to satisfy each requirement of the Listing.  Smith-Johnson, 2014 WL 4400999, at *6.  Snyder "must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing."  Id.  Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a Listing at Step 3.  Id.

Here, Snyder does point to some evidence in the record which he contends could support a finding of disability through meeting or equaling Listing 1.04.  (Doc. 14, at 16-17.)  For example, Snyder points to evidence in the record concerning an inability to ambulate effectively, and his use of a cane as recommended by his physical therapist.  Id. at 17.  Yet Snyder notes that the ALJ did not provide an analysis of this limitation under Listings 1.04 and 1.00(B)(2)(b).  Id.

The Sixth Circuit has stated it may be proper to consider the ALJ's evaluation of the claimed impairments at issue at other steps of his decision. Smith-Johnson, 2014 WL 4400999, at *8.  In support, the court cited Bledsoe v. Barnhart, No. 04-4531, 2006 WL 229795, at *3, (6th Cir. Jan. 31, 2006), which found that "the ALJ appropriately considered a claimant's combined impairments at step three in part because he 'described evidence pertaining to all impairments, both severe and nonsevere, for five pages earlier in his opinion and made factual findings.'"  Id.  Under the facts in Bledsoe, the court declined to require a heightened articulation standard.  Hunter v. Astrue, No. 1:09CV2790, 2011 WL 6440762, at *3 (N.D. Ohio Dec. 20, 2011) (quoting Bledsoe).

In Hunter, by contrast, "the record reflects that the ALJ failed to evaluate the medical evidence and compare it to the requirements for the listed impairment." Hunter, 2011 WL 6440762, at *3.  The court pointed out that the Sixth Circuit, in Reynolds v. Commissioner, No. 09-2060, 2011 WL 1228165, at *3 (6th Cir. Apr. 1, 2011), found an ALJ had erred where the ALJ failed to analyze the claimant's physical condition in relation to the listed impairments.  Hunter, 2011 WL 6440762, at *3.

Similarly, in Marok v. Astrue, this court found

> In contrast to the ALJ's decision in Bledsoe where the challenged articulation was found to be specific enough, in this case the ALJ's written decision states that he considered "all symptoms" and "opinion evidence" in accordance with the applicable requirements, but he does not describe that evidence or his findings relative to it, making the ALJ's written decision ambiguous or otherwise incomplete in an important respect.

Marok v. Astrue, No. 5:08CV1832, 2010 WL 2294056, at *5 (N.D. Ohio June 3, 2010).  The ALJ's analysis in this case is closer to the situation in Hunter and Marok than to that in Bledsoe.

Although it is the claimant's burden of proof at Step 3, the ALJ must provide articulation of his Step 3 findings that will permit meaningful review.  Woodall v. Colvin, No. 5:12CV1818, 2013 WL 4710516, at *10 (N.D. Ohio Aug. 29, 2013).  This court has stated that "the ALJ must build an accurate and logical bridge between the evidence and his conclusion."  Woodall, 2013 WL 4710516, at *10 (citations omitted).  In Woodall, although the ALJ stated that all listings were considered in reaching the Step 3 finding, including a particular relevant listing,

18

> . . . the ALJ failed to discuss those Listings and failed to compare them with the evidence of record to show how he determined that Claimant's impairments did not meet or medically equal any of the Listings. He also indicated that he considered the opinions of the state agency medical consultants, but he did not discuss their findings or opinions in the context of the meets or equals analysis.

Woodall, 2013 WL 4710516, at *10.

The court also discussed the Reynolds decision, and noted that the Sixth Circuit found:

> In short, the ALJ needed to actually evaluate the evidence, compare it to . . . the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review.  Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence.

Woodall, 2013 WL 4710516, at *11 (quoting Reynolds, 2011 WL 1228165, at *4). Woodall noted that courts in this district have applied Reynolds to remand cases "where the ALJ provided only a conclusory statement and failed to conduct a meaningful Step Three analysis that compares the medical evidence to the applicable listing and provides an 'explained conclusion' as to why a claimant's impairments failed to meet or equal a Listing."  Woodall, 2013 WL 4710516, at *11 (citing cases); see also Marok, 2010 WL 2294056, at *4 (courts have repeatedly remanded cases when ALJ fails to articulate  meaningful discussion of Listings or related criteria).

The court in Woodall rejected the Commissioner's contention that the ALJ's functional equivalence analysis provided a basis for upholding the Step 3 finding. The court pointed out that a number of courts in this Circuit have held that an

ALJ's functional equivalence analysis does not provide an adequate substitute for the deficient Step 3 analysis. Woodall, 2013 WL 4710516, at *11-*12 (citing cases).

In this case, the ALJ's Step 3 determination was that no treating or examining physician indicated findings that would satisfy the severity requirements of any listed impairment. (Tr., at 21.) The ALJ stated that he considered the opinions of the State Agency medical consultants, who reached the same conclusion. (Tr., at 21.) The ALJ said he considered all relevant Listings in reaching his finding, "with specific emphasis on listing 1.04." (Tr., at 22.) The ALJ's decision continued and, at Step 4, contained a lengthy recitation of Snyder's medical record, and then summarized why the ALJ found Snyder's "alleged limitations" not fully credible. (Doc. 13, tr., at 23-25.)

At no point, however, did the ALJ specifically discuss the elements of Listing 1.04, the specific evidence relevant to the Listing, and why he determined that evidence failed to satisfy the severity requirements of the Listing. As Snyder points out, there are arguably aspects of the Listing in the record, yet the ALJ does not address them. (Doc. 14, at 16-17.) For example, in his RFC the ALJ mentions Snyder's use of a cane (tr., at 25), but does not address at Step 3 how or whether the necessity of his use of a cane does or does not meet or equal Listings 1.04 and 1.00(B)(2)(b).

The court finds that the second allegation of error has merit. The ALJ's decision should be vacated and remanded for a more thorough Step 3 determination.

## 2.  Medical expert

As to his third claim, Snyder claims that no physical consultative exam took place, and claims there are no medical opinions in the record based on a review of the entire medical record.  (Doc. 14, at 19.)  Snyder argues that, in this situation, "the ALJ should have further explained why he decided not to use a medical expert in making his findings on medical equivalence."  (Doc. 14, at 19, citing Ridge, 232 F.Supp.2d at 789.)  The court finds no indication in the record, and Snyder points to no evidence, that Snyder requested that the ALJ consult a medical expert on this issue.  See generally Simpson v. Commissioner of Social Sec., No. 08-3651, 2009 WL 2628355, at *7 (6th Cir. Aug. 27, 2009) (without any request from claimant or counsel for medical expert testimony, ALJ reasonably concluded record was complete).

The Commissioner responds that Ridge simply indicates that, "where the ALJ failed to thoroughly analyze the medical evidence, then he should have secured additional medical testimony."  (Doc. 17, at 13.)  Here, the Commission contends that the ALJ did thoroughly summarize the evidence, and explained why Snyder did not meet or equal the Listing.  Id.

 In Long, this court pointed out that an ALJ is not required to call a medical expert.  Long ex rel. D.C.P. v. Commissioner of Soc. Sec. Admin., No. 1:13CV576, 2014 WL 1333270, at *14 n.28 (N.D. Ohio Mar. 28, 2014).  See also Simpson, 2009 WL 2628355, at *8 (ALJ has discretion whether to call medical expert or not); Davis v. Chater, 104 F.3d 361, 1996 WL 732298, at *2 (6th Cir. 1996) (TABLE, text in

21

WESTLAW) (per curiam) (ALJ's failure to call medical expert does not prevent finding that substantial evidence supports ALJ's decision); O'Neill v. Colvin, No. 1:13CV867, 2014 WL 3510982, at *18 (N.D. Ohio July 9, 2014); Touart v. Commissioner of Social Sec. Admin., No. 1:12CV0733, 2013 WL 2185848, at *15 (N.D. Ohio May 21, 2013) (ALJ not required to call medical expert). Where the record contains sufficient evidence for the ALJ to decide a disability claim absent expert medical testimony, failure to call a medical expert will not support remand. Long, 2014 WL 1333270, at *14 n.28. See also O'Neill, 2014 WL 3510982, at *18; Touart, 2013 WL 2185848, at *15.

In Long, the court found sufficient evidence for the ALJ to have decided the claimant's disability claim, thus there was no error. Long, 2014 WL 1333270, at *14 n.28. In O'Neill, the court found that the ALJ did not commit error by relying on the opinions[2] of agency physicians that the claimant's impairments did not meet or equal a Listing. O'Neill, 2014 WL 3510982, at *18.

The court finds Snyder's request for reversal and remand based on the ALJ's allegedly failure to call a medical expert concerning his Step 3 analysis to be without merit. The third alleged error should be overruled.

### 3. Summary regarding Step 3 issues

Snyder argues that he has made a compelling case that the evidence shows that Listing 1.04 is met or equaled. See, e.g., doc. 18, at 2-4. The court finds that

---

[2] Here, Snyder concedes that both medical opinions in the record agreed, for example, on the overall RFC assessment. (Doc. 14, at 6-7.)

the record evidence as discussed in the ALJ's decision is not such that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination.  See Kirk, 667 F.2d at 535.  The court finds that the ALJ's decision regarding listing 1.04 is not supported by substantial evidence.  The ALJ's decision should be vacated and remanded for a more thorough Step 3 determination.

## C.  RFC Determination

The fourth claim challenges the ALJ's decision in Steps 4 and 5 on this basis: "Whether the ALJ's RFC [residual functional capacity] finding is supported by substantial evidence and whether the ALJ followed the requirements of SSR 96-8p based on the limitations imposed by Charles' spine disorders at Steps 4 and 5." Snyder argues that there was no evidence presented that Snyder could sustain work on a full-time basis.  (Doc. 14, at 20.)  Snyder contends that "substantial evidence does not support the omission of attendance limitations in the RFC finding as there is unrefuted evidence of Charles' inability to attend even part-time employment on a sustained level acceptable by employers."  (Doc. 14, at 21.)

The sixth claim is related:  "Whether substantial evidence supports the ALJ's finding at Step 5 that Charles could engage in substantial gainful activity based on the evidence presented by the VE [vocational expert] regarding absenteeism and Charles' employment records."  Snyder contends that uncontested evidence in the record shows that Snyder "was absent for three and four days in consecutive months of part-time employment as a result of his impairments."  (Doc. 14, at 24.)

23

The Commissioner responds that the ALJ took into account the number of days Snyder was absent, and discussed absenteeism limitations with the vocational expert.  (Doc. 17, at 13-14, 16.)  As reflected in the synopsis of the VE's testimony (above), the VE testified in response to the ALJ's hypotheticals that such an individual, who was absent from work 13 times over an eight month period, would be able to maintain employment.  (Doc. 17, at 14, citing tr., at 62-63.)  As the Commissioner points out, that level of absenteeism is consistent with Snyder's actual absenteeism from his previous employment during the relevant time period.  (Doc. 17, at 14, citing tr., at 214.)  Thus, the Commissioner contends the ALJ's RFC findings are supported by substantial evidence.

Although Snyder argues that a letter from Snyder's past employer should evidence that Snyder is unable "to attend even part-time employment on a sustained level," doc. 14, at 21, the ALJ found that the "duties of his past relevant worked exceed the [current] residual functional capacity."  The ALJ did find that Snyder was unable to perform his past relevant work.  (Tr., at 25.)  However, the ALJ found that Snyder retained the residual functional capacity to perform sedentary work[3], except that he must be allowed to sit or stand alternatively.  (Tr., at 22.)  The ALJ determined that the RFC accommodates Snyder's symptoms,

---

[3] The physical RFC by Dr. McCloud found that Snyder could work at the light level.  (Tr., at 439-446.)  The file was reviewed by Dr. Teague on Feb. 17, 2011, "and the RFC dated 6/29/10 [by Dr. McCloud] is affirmed as written."  (Tr., at 478.)  However, the ALJ determined based on the evidence before him that Snyder should be limited to the sedentary level.  (Tr., at 25.)

including his leg weakness, the necessity to alternate positions, and the use of a cane.  (Tr., at 25.)

The court finds that the ALJ's decision regarding Snyder's level of absenteeism and his ability to maintain employment is supported by substantial evidence.  The fourth and sixth alleged errors should be overruled.


### D.  Credibility

The fifth claim is "Whether the ALJ followed the directives of SSR 96-7p when analyzing Charles' credibility, and whether the ALJ's credibility finding is supported by substantial evidence."  Snyder asserts that the ALJ did not follow the directive of SSR 96-7p, governing credibility determinations.  (Doc. 14, at 22.) Snyder states that the ALJ's credibility determinations must be "based on a consideration of the entire case record," and "must find support in the record."  (Doc. 14, at 22, quoting Gonzalez v. Commissioner, No. 1:06CV687, 2008 WL 584927, at *5  (W.D. Mich. Jan. 17, 2008).)

The ALJ stated that he found Snyder's alleged limitations to be "not fully credible," notwithstanding the fact that Snyder had several surgeries during the alleged period of disability.  The ALJ found that Snyder's "ongoing work [for almost a year], even if accommodated, demonstrates he was capable of more than he asserts."  (Tr., at 25.)  The ALJ opined that his RFC finding accommodates Snyder's alleged symptoms.

Snyder complains that the ALJ's finding that Snyder's continued work damaged his credibility, would remove any incentive for claimants to attempt work while their claims are pending. (Doc. 14, at 22.) This is a policy argument which the court cannot address. Snyder also contends that his "well-intentioned effort to continue to work despite severe medical issues only bolsters his credibility." (Doc. 14, at 22.) Snyder concedes that his working showed "he was making the absolute most of his physical capabilities." Id. at 22-23.

The Commissioner responds that the ALJ considered all of the relevant evidence, in compliance with SSR 96-8p, and determined that Snyder's subjective complaints were not fully credible. (Doc. 17, at 14.) The Commissioner notes that, when evaluating a claimant's credibility, the ALJ is required to ascertain whether the claimant has a medically-determinable impairment that could reasonably cause the symptoms alleged, and then must evaluate the intensity and persistence of the symptoms to determine whether they limit the claimant's capacity to work. (Doc. 17, at 14, citing 20 C.F.R. §§ 404.1529(c), 416.929(c).) The claimant's own description, standing alone, of his impairment and symptoms is not sufficient to establish disability. (Doc. 17, at 14-15, citing 20 C.F.R. §§ 404.1528(a), 416.928(a).) The ALJ considers whether the claimant's self-reported symptoms can "reasonably be accepted as consistent with the objective medical evidence, and other evidence." (Doc. 17, at 15, citing 20 C.F.R. §§ 404.1529(a), 416.929(a).)

The ALJ, after "careful consideration of the evidence," found Snyder's medically determinable impairments could reasonably be expected to cause the

alleged symptoms.  However, the ALJ found Snyder's statements concerning the intensity, persistence and limiting effects of these symptoms not to be fully credible.  (Tr., at 22; see also tr., at 444 (Dr. McCloud: Snyder's complaints "are not proportionate with the objective medical evidence in file").)  The ALJ addressed his credibility determination as outlined above.  (Tr., at 25.)

The ALJ's findings based on the credibility of the claimant are accorded great weight and deference.  Walters v. Commissioner, 127 F.3d 525, 531 (6th Cir. 1997); Gonzalez v. Commissioner, No. 1:06CV687, 2008 WL 584927, at *5  (W.D. Mich. Jan. 17, 2008).  Nevertheless, the ALJ's assessment of the claimant's credibility must be supported by substantial evidence.  Id.

The ALJ is not permitted to make credibility determinations based solely upon intangible or intuitive notions about an individual's credibility, but rather the ALJ's credibility determinations must be "based on a consideration of the entire case record," and "must find support in the record."  Rogers v. Commissioner, 486 F.3d 234, 247-248 (6th Cir. 2007).  SSR 96–7p also requires the ALJ explain his credibility determinations in his decision such that it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  Rogers, 486 F.3d at 248.  The court finds that the ALJ's credibility determinations are reasonable, specific,  and supported by substantial evidence.

Snyder admits that, despite enduring six surgical procedures, he was able to return to work.  (Doc. 14, at 23.)  The ALJ found that Snyder's "ongoing work, even

27

if accommodated, demonstrates he was capable of more than he asserts." (Tr., at 25.) The ALJ identified specific facts supported by the record which cast doubt on the severity of the disabilities as described by Snyder. (Tr., at 22, 25.) Because "a reasonable mind might accept [the evidence] as adequate to support" his credibility determination, the court concludes that substantial evidence supports the ALJ's finding. Norris v. Commissioner, No. 11-5424, 2012 WL 372986, at *5 (6th Cir. Feb. 7, 2012) (citing Rogers, 486 F.3d at 241). The fifth alleged error should be overruled.


## IX. SUMMARY

For the foregoing reasons, the court finds that the decision of the Commissioner is not supported by substantial evidence. The record evidence as discussed in the ALJ's decision is not such that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination. The court finds that the ALJ's decision regarding Listing 1.04 is not supported by substantial evidence. Accordingly, the ALJ's decision should be vacated and remanded for a more thorough Step 3 determination.

## X.  RECOMMENDATION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the Court recommends that the decision of the Commissioner be **VACATED** and the case be **REMANDED** back to the administration.


s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge


Date:  Nov. 14, 2014.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn, 474 U.S. 140 (1985)*; *see also United States v. Walters, 638 F.2d 947 (6th Cir. 1981)*.